DECISION
In this negligence action, plaintiff Roger Ayotte (Ayotte) seeks a new trial after a jury found in favor of defendants Lynda Rodriguez (Rodriguez) and Robert DeCosta (DeCosta). As grounds for his new trial motion, Ayotte asserts that the jury instructions were erroneous and prejudicial; that the verdict was against the weight of the testimonial and documentary evidence; and that he received "ineffective assistance of counsel." Jurisdiction is pursuant to Super. R. Civ. P. 59.
 Facts and Travel
The events giving rise to this litigation occurred on October 9, 2002. On that day, Ayotte was driving his motorcycle in a southerly direction behind a tanker trailer on Elmwood Avenue in Cranston. The tanker trailer stopped in the roadway; so, Ayotte pulled into the passing lane of the four-lane street and accelerated his motorcycle in order to overtake the vehicle. A Ford Explorer driven by defendant DeCosta was directly in front of the tanker trailer. It too had stopped, apparently to allow defendant Rodriguez to exit a business establishment, cross over the two southbound lanes, and then continue in a northerly direction.
Plaintiff Ayotte testified that the Rodriguez vehicle crossed into his path, and that he was forced to take emergency evasive action which culminated in his losing control of his motorcycle. He later filed this negligence action against the defendants to recover for his injuries. After a trial, the jury found in favor of the defendants. Ayotte then filed a timely motion for a new trial.
 Standard of Review
Rule 59 of the Superior Court Rules of Civil Procedure governs the granting of a new trial. It provides in pertinent part:
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state." Sup. Ct. R. Civ. P. 59(a).
When ruling on a motion for a new trial, the trial justice functions as a "superjuror." Candido v. University of RhodeIsland, 880 A.2d 853, 856 (R.I. 2005). In carrying out that role, the trial justice must review the evidence and assess credibility. Crafford Precision Products Co. v. Equilasers,Inc., 850 A.2d 958, 963 (R.I. 2004). Assuming that the jury instructions were proper, a trial justice may grant a new trial when "`the verdict is against the preponderance of the evidence and thereby fails to either do justice to the parties or respond to the merits of the controversy.'" Blue Coast, Inc. v. SuarezCorp. Industries, 870 A.2d 997, 1008 (R.I. 2005) (quotingCrafford Precision Products Co. v. Equilasers, Inc.,850 A.2d 958, 963 (R.I. 2004)).
If erroneous jury instructions are given, then the trial justice may grant a new trial pursuant to Sup. Ct. R. Civ. P. 59(a)(1). See Children's Friend Service v. St. Paul Fire Marine Ins. Co., 893 A.2d 222, 230 (R.I. 2006) ("In a civil case tried before a jury, a trial justice may grant a new trial based on an erroneous jury instruction pursuant to Rule 59(a)(1));see also General Laws 1956 § 8-2-38 ("In every case, civil and criminal, tried in the superior court with a jury, the justice presiding shall instruct the jury in the law relating to the action. . . ."). Viewing the instructions as a whole, "[a]n erroneous charge warrants reversal only if it can be shown that the jury `could have been misled' to the resultant prejudice of the complaining party." Maglioli, 869 A.2d at 75 (quotingContois v. Town of West Warwick, 865 A.2d 1019, 1022 (R.I. 2004)). Determining whether a jury instruction was erroneous is a question of law. See Maglioli, 869 A.2d at 75.
The Jury Instructions
At the conclusion of the evidentiary portion of the trial, this Court instructed the jury about the applicable law that it must consider. Accordingly, the jury was instructed to consider the language contained in G.L. 1956 § 31-15-4, entitled overtaking on the left, and § 31-15-11, entitled laned roadways. Counsel for the plaintiff timely objected to the § 31-15-4 instruction; consequently, the issue properly was preserved for consideration in this new trial motion. Cf. Bajakian v. Erinakes,880 A.2d 843, 852 (R.I. 2005) ("[J]ury instructions that are not objected to become the law of the case and are binding on both the jury and the trial justice when he or she passes on a motion for new trial.") (quoting Zawatsky v. Cohen, 463 A.2d 210, 212 (R.I. 1983)). To address the jury instruction issue, this Court must interpret the language of § 31-15-4.
Statutory interpretation is a question of law. See Palazzolov. State ex rel. Tavares, 746 A.2d 707, 711 (R.I. 2000). Where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent."Retirement Bd. of Employees' Retirement System of State v.DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). Thus, when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Id. However, when statutory provisions are unclear or ambiguous, this Court examines the statute in its entirety. In re Advisory to the Governor, 668 A.2d 1246, 1248
(R.I. 1996).
In its construction of a statute, this Court is "obligated to give effect to every part of the statute if it is workable and does not result in absurdity or inconsistency." SportfishermanCharter, Inc. v. Norberg, 115 R.I. 68, 73, 340 A.2d 143, 146
(1975) (citing Ewing v. Tax Assessors, 90 R.I. 86, 155 A.2d 61
(1959)). In Rhode Island, "[o]ur process of statutory construction further involves a `practice of construing and applying apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency.'" Kells v. Town ofLincoln, 874 A.2d 204, 212 (R.I. 2005) (quoting Montaquila v.St. Cyr, 433 A.2d 206, 214 (R.I. 1981)). Finally, as already noted, "[t]his Court will not construe a statute to reach an absurd result." State v. Flores, 714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)).
Ayotte asserts that § 31-15-4 was inapplicable in this case. Section 31-15-4 requires motorists to audibly signal as they pass other vehicles. Ayotte contends that this provision applies only to single-lane roadways rather than multiple-lane roadways such as Elmwood Avenue. He maintains that the giving of this instruction was erroneous and prejudiced the jury against his claim because it could have found against him for not giving an audible signal when he overtook the tanker trailer.
Section 31-15-4 provides in pertinent part:
 "The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules stated in this chapter:
 (1) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall give a timely, audible signal and shall pass to the left at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
 (2) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his or her vehicle until completely passed by the overtaking vehicle."
The plain meaning of this language is that a motorist who wishes to overtake another vehicle must give the other motorist an audible signal while passing in a safe manner, and that the motorist who is being overtaken may not accelerate until the other vehicle has passed completely.
Section 31-15-11 provides in pertinent part:
 "Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules in addition to all others consistent with them shall apply:
 (1) A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety."
This provision requires a motorist to remain in one lane of travel until he or she safely can move into another lane.
Considering that § 31-1-4 already requires a motorist to pass in a safe manner, the § 31-15-11 safety requirement is superfluous unless § 31-1-4 is interpreted to apply only to single-lane roadways. Furthermore, if motorists are required to make an audible signal when overtaking a vehicle on a two-lane roadway, such requirement could cause unnecessary confusion and pose a safety hazard to other motorists. Such an interpretation would produce an absurd result. Additionally, to require a motorist not to accelerate when a vehicle is passing in an adjoining lane also appears to be absurd. Consequently, this Court concludes that § 31-15-4 applies only to single-lane roadways where a vehicle must cross the center line and give an audible signal in order to safely overtake a vehicle.
 Conclusion
Considering that § 31-15-4 applies only to single-lane roadways, this Court concludes that it was erroneous to instruct the jury that Ayotte had to give an audible signal when he overtook the tanker trailer. This Court further concludes that the erroneous instruction was prejudicial to Ayotte's case as a reasonable jury could have found in favor of the defendants because Ayotte failed to give an audible signal. Consequently, this Court grants Ayotte's motion for a new trial. Furthermore, because this Court has granted a new trial based upon an error of law, it need not address Ayotte's other appellate issues. Suffice it to say, however, that the "ineffective assistance of counsel" assertion not only was inapplicable in this civil case (see
article 1, section 10, of the Rhode Island Constitution, entitled rights of accused persons in criminal proceedings) (emphasis added), but the claim lacked merit because counsel for the plaintiff competently advocated for his client.
Counsel shall submit an appropriate judgment for entry.